IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

VERONICA WHISMAN PLAINTIFF

v. CASE NO. 6:25-CV-06063-JTS-MEF

AL RAJABI, JASON ENGLE,
THE ARLINGTON HOTEL RESORT
& SPA, and SKY ASSOCIATES, L.L.C. DEFENDANTS

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Currently before the Court is Defendants' Motion for Summary Judgment. (ECF No. 92). Pursuant to 28 U.S.C. §§ 636(b)(1) and (3), the case was referred to the undersigned for all pretrial matters. (ECF No. 24). Plaintiff has filed a response in opposition (ECF No. 100), and the matter is now ripe for recommendation.

## I. BACKGROUND

In May 2024, Sky Associates, LLC, hired Veronica Whisman ("Plaintiff") to work as a room attendant in the housekeeping department at the Arlington Hotel Resort & Spa (the "Arlington") in Hot Springs, Arkansas. (ECF No. 2-2; ECF No. 92-1, pp 7, 10). During new hire orientation, the Plaintiff was informed of the Arlington's Sexual Harassment, Workplace Violence, and No Retaliation policies. (ECF No. 92-1, pp. 7-8; ECF No. 92-2, p. 3). She also had access to these policies as well as all the hotel's policies and procedures via the Employee Handbook on the Employee Paycom portal. (ECF No. 92-1, p. 8). The Plaintiff admitted to being vaguely familiar with the harassment and complaint procedure, although she did not read "every bit of it." (*Id*. at 8-9).

The housekeeping department at the Arlington is comprised of room attendants, hallmen, and floor coordinators, all reporting to the department manager and assistant manager. (ECF No.

92-2, p. 2). Room attendants are tasked with cleaning guest rooms; hallmen strip the beds and take the dirty linens and trash out of the rooms; and the floor coordinators perform a final inspection of the rooms to confirm they are ready for guests. (ECF No. 92-1, pp. 14-15). Although the room attendants work with the hallmen and floor coordinators to ensure that all the rooms are cleaned, neither position has the authority to hire, fire, discipline, or reassign an employee to another position. (ECF No. 92-1, p. 15).

Plaintiff's first day of employment with the Arlington was May 22, 2024. (ECF No. 92-2, pp. 2, 8). During the first six months of her employment, Kori Nooner ("Nooner") was the head of housekeeping and Alan Roofe ("Roofe") was the assistant manager. (ECF No. 92-2, p. 2). On October 31, 2024, Nooner was named human resources ("HR") manager, Roofe became department manager, and Russell Weaver ("Weaver") was appointed assistant manager. (ECF No. 92-1, p. 16; ECF No. 94).

On November 10, 2024, Roofe reported to Nooner that he suspected the Plaintiff may be under the influence of a substance after observing her "singing and dancing erratically" in the hallway. (ECF No. 92-2, pp. 3, 78). Nooner advised Roofe to continue observing Plaintiff and, if necessary, send her to HR for a drug test pursuant to the Arlington's Drug-Free Workplace Policy. (*Id.*). Thereafter, Roofe reported no further concerns, and no employment action was ultimately taken. (*Id.* at pp. 3, 78).

On November 24, 2024, Nooner received a second report from Roofe that Plaintiff appeared intoxicated and was acting incoherently during her shift. (ECF No. 92-2, pp. 3, 79). He indicated that her assigned hallman, Jason Engel ("Engel"), felt very uncomfortable. (*Id.*). As per Nooner's directive, Roofe sent the Plaintiff home and instructed her to report to the HR office the following morning. (*Id.*). When the Plaintiff arrived in the HR office on November 25, 2024,

Nooner determined she would not be required to submit to a drug test. Plaintiff then reported that while working in a guest room the previous day, Engel approached her and asked if she had any dope. (*Id*. at pp. 3-4, 79). When she responded that she no longer used drugs, Engel allegedly asked her for a sexual favor. (*Id*. at pp. 4, 80). Plaintiff did not respond, causing Engel to repeat the question. Plaintiff stated she ignored both comments. (*Id*. at pp. 4, 80). Nooner advised Plaintiff that the alleged behavior constituted a serious violation of company policy and that a formal investigation would be conducted. (*Id*. at pp. 4, 80). Further, Plaintiff was asked to submit a written statement regarding the incident. (*Id*.).

At around 12:20 p.m. on November 25, 2024, James White ("White"), a maintenance engineer at the Arlington and close friend of the Plaintiff's, voluntarily reported to Nooner that he had overheard the conversation between Engel and Plaintiff on November 24. (ECF No. 92-2, p. 4, 80). He, too, was asked to submit a written statement.

Later in the day, Nooner spoke with Engel and Roofe. (ECF No. 92-2, p. 4, 80). Engel denied making any inappropriate or sexual remarks to the Plaintiff and claimed the report was retaliatory due to his earlier report of her possibly being intoxicated. (*Id*.). He described all conversations with Plaintiff as work-related. (*Id*.). However, Nooner admonished him that sexual comments in the workplace violate company policy and would not be tolerated.

On November 27, 2024, Nooner met with Roofe and Weaver regarding the Plaintiff's complaint to determine whether either of them had witnessed any inappropriate, unprofessional, or flirtatious interactions between Plaintiff and Engel. (ECF No. 92-2, p. 5). Both responded negatively. (*Id*.). She then instructed them not to assign the Plaintiff and Engel to work on the same floor.

Although the Plaintiff claims to have slid two separate written statements under Nooner and General Manager Alan Sims' office doors while they were out of the office, there is no record that either of these statements were received. (ECF No. 92-1, pp. 47-48). Having received no written statements from Plaintiff or White, Nooner closed the investigation on November 29, 2024. (ECF No. 92-1, p. 48; ECF No. 92-2, pp. 5, 80).

In late December 2024 and early January 2025, during the Arlington's typical slow season, Plaintiff and at least two of her co-workers had their hours reduced. She applied for a floor coordination position within the housekeeping department in mid-February but was not selected. (ECF No. 92-1, p. 44). Although she now claims that a less qualified black male was ultimately selected for the position, the Plaintiff has admitted that she had some performance and attendance issues. (ECF No. 92-1, pp. 16-17).

Later that month, Plaintiff reached out to Nooner to ask if there were any other departments at the Arlington where she might be able to obtain additional hours. (ECF No. 92-1, p. 42; ECF No. 92-2, pp. 5, 82). Nooner asked Plaintiff if she would be willing to help in Banquets as there might be some hours available in that department. (ECF No. 92-1, p. 42; ECF No. 92-2, pp. 6, 82). Unfortunately, upon further inquiry, there were no hours available. (ECF No. 92-1, p. 42).

Plaintiff verbally submitted her two-week notice on April 22, 2025, stating she had received another job opportunity. (ECF No. 92-1, p. 30; ECF No. 92-2, pp. 83). Because the Arlington's peak season was nearing, Roofe advised Plaintiff that he could ensure she would get as many hours as she was expecting at her new job. (ECF No. 92-1, p. 43). He could not, however, meet the hourly wage her new position offered. (*Id.*).

On April 23, 2025, Plaintiff presented in Nooner's office with concern regarding an inappropriate comment made by Engel while in a guest room with Plaintiff and another room

attendant, Arabian Coleman. (ECF No. 92-1, p. 28; ECF No. 92-2, pp. 6, 84). Plaintiff played a recording of the conversation during which one of the women asked Engel a question and he responded, "They need to hire more females that I haven't sexually harassed yet." (ECF No. 92-1, p. 28; ECF No. 92-2, pp. 6, 84). At Nooner's request, Plaintiff forwarded her the audio recording for documentation. (ECF No. 2-1, p. 34; ECF N. 92-2, p. 6).

The next day, Nooner discussed the incident with Engel. (ECF No. 92-2, pp. 6. 84). He acknowledged the conversation but stated his remarks were made in a joking manner while he and the room attendants were cleaning a guest room. (*Id.*). He emphasized that the comments were not intended to be taken seriously. (*Id.*). Nevertheless, Nooner advised Engle that all comments of a sexual nature are inappropriate and could be perceived as harassment, emphasizing the importance of maintaining a professional and respectful work environment. Further, she cautioned him to be mindful of his language while on duty. (*Id.* at pp. 7, 84).

Aside from Plaintiff's November 2024 and April 2025 complaints, Nooner indicated that she had received no other complaints about Engel. (ECF No. 92-2, pp. 6, 84). Further, in her investigative report, she noted he was "punctual, has impeccable attendance, and performs all job duties in a satisfactory manner." (ECF No. 92-2, pp. 6, 85).

Plaintiff's last day at the Arlington was April 28, 2025, six days after submitting her two-week notice. (ECF No. 92-1, p. 12). Three days later, she filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") reasserting her sexual harassment allegations. (ECF No. 2-4). In addition to the two harassment claims verbally expressed to Nooner, the Plaintiff also indicated that Engel continued to harass her after her initial report, by making comments about her butt, pinching and slapping her butt, simulating humping motions behind her back, making a comment that there was too much estrogen in the elevator, and

commenting on the size of her mouth while she was eating a cupcake. (ECF No. 92-1, pp. 23-62, 72). Further, she argued her hours were cut and she was passed over for the floor coordinator position in 2025 in retaliation for reporting Engel's harassment. (ECF No. 2-4). The EEOC issued Plaintiff's Notice of Right to Sue letter on May 6, 2025. (ECF No. 2-3).

On June 20, 2025, Plaintiff filed the present suit against hotel owner, Al Rajabi ("Rajabi"), Engle, and the Arlington for sexual harassment and retaliation in violation of 42 U.S.C. § 1983 and Title VII of the Civil Rights Act of 1964. (ECF No. 2). On February 29, 2016, the Defendants filed a Motion for Partial Summary Judgment (ECF Nos. 44, 45) seeking dismissal of the individual and official capacity claims against the individual Defendants, Rajabi and Engle, because there is no individual liability under Title VII; dismissal of the official capacity claims against the individual defendants because they are duplicative; and dismissal of the § 1983 claims against all defendants because none are state actors. On April 20, 2026, the undersigned recommended Defendants' motion be granted. (ECF No. 74). Said report and recommendation remains pending.

On June 24, 2026, Defendants filed a Motion for Summary Judgment, Brief in Support, and Statement of Facts seeking dismissal of the remaining Title VII claims. (ECF Nos. 92, 93, 94). Pursuant to this Court's Final Scheduling Order, Plaintiff's response was due July 8, 2026. (ECF No. 23). She did not file her Response in Opposition until July 22, 2026.[1] (ECF No. 100). The Defendants then filed a reply. (ECF No. 101).

[1] Defendants indicate that the Plaintiff emailed her response to defense counsel on July 17, 2026. (ECF No. 101, p. 2). Even using this date as her filing date, Plaintiff's response was nine days late.

## II. APPLICABLE LAW

The standard for summary judgment is well established. When a party moves for summary judgment, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Krenik v. Cnty. of LeSueur*, 47 F.3d 953, 957 (8th Cir. 1995). This is a "threshold inquiry of ... whether there is a need for trial—whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they reasonably may be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250 (1986). A fact is material only when its resolution affects the outcome of the case. *Id*. at 248. A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Id*. at 252.

In deciding a motion for summary judgment, the Court must consider all the evidence and all reasonable inferences that arise from the evidence in a light most favorable to the non-moving party. *Nitsche v. CEO of Osage Valley Elec. Co-Op*, 446 F.3d 841, 845 (8th Cir. 2006). The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See Enter. Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996). The non-moving party must then demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik*, 47 F.3d at 957. They "may not rest upon mere allegations or denials," rather they "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. "Mere allegations, unsupported by specific facts or evidence beyond the non-moving party's own conclusions, are insufficient to withstand a motion for summary judgment." *Thomas v. Corwin*, 483 F.3d 516, 526-27 (8th Cir. 2007).

The court will not, however, consider summary judgment evidence that a party failed to produce during discovery, unless that failure is excused. *See Geico General Ins. Co. v. Brauner*, 2022 WL 19263351, *4 (W.D. Mo. Aug. 16, 2022) ("Upon notification by any party that a document or other item of evidence was not produced in discovery to-date, the Court will strike such evidence from its consideration on the motions for summary judgment). Pursuant to the Federal Rules of Civil Procedure, withheld or undisclosed material is automatically excluded unless the violation is substantially justified or harmless. Fed. R. Civ. P. 37(c).

## III. DISCUSSION

In their Motion for Summary Judgment, the Defendants insist the Plaintiff can neither establish an actionable harassment claim nor a retaliation claim. (ECF Nos. 92, 93, 94). The Plaintiff contends that genuine issues of material fact exist concerning the alleged remedial actions taken by the Defendants and the adverse employment actions taken against her. (ECF No. 100). We note, however, that her Response in Opposition was filed 28 days after the filing of the Defendant's Motion, and 14 days after the July 8 response deadline set in the Final Scheduling Order. (ECF No. 23, 100). The response neither mentions the expiration of the deadline to file nor explains her failure to comply with the filing deadline. In their reply, the Defendants insist that Plaintiff's untimely response be stricken. And the Court agrees. In a situation such as this, where the response filed by the non-moving party is stricken as untimely, the court may consider the facts undisputed for purposes of the motion and grant summary judgment if "the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it . . . ." Fed. R. Civ. P. 56(e)(3).

Even if the Plaintiff's response had been timely filed, she also failed to submit a separate Statement of Disputed Facts as directed by Local Rule 56.1(b). *See* W.D. Ark. L.R. 7.2(b), 56.1(b).

Local Rule 56.1(b) requires the non-moving party opposing the summary judgment motion to file a separate statement of disputed facts, specifically addressing each of the moving party's purported undisputed material facts. Because the Plaintiff failed to do so, the Defendants' Statement of Facts is deemed admitted pursuant to Local Rule 56.1(c).

Therefore, in determining whether there are genuine disputes of material fact, the Court will consider the allegations set forth in Plaintiff's verified Amended Complaint. A verified complaint is the equivalent of an affidavit for summary judgment purposes. *See, e.g., Roberson v. Hayti Police Dep't.*, 241 F.3d 992, 994-95 (8th Cir. 2001). "[A] complaint signed and dated as true under penalty of perjury satisfies the requirements of a verified complaint . . .." *Id.* As the Court in *Roberson* pointed out, "[a]lthough a party may not generally rest on his pleadings to create a fact issue sufficient to survive summary judgment, the facts alleged in a verified complaint need not be repeated in a responsive affidavit to survive the summary judgment motion. *Id.* The Court will, therefore, "piece[] together [Plaintiff's] version of the facts from the verified complaint . . .." *McClanahan v. Young*, No. 4:13-cv-04140, 2016 WL 520983, *1 (D.S.D. Feb. 5, 2016).

**A. The Sexual Harassment Claim**

Plaintiff claims that Engel's alleged sexual harassment created a hostile work environment. To establish a prima facie case of hostile work environment harassment, the Plaintiff must demonstrate that: (1) she belongs to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment was based on sex; (4) the harassment affected a term, condition, or privilege of her employment; and (5) her employer knew or should have known of the harassment and failed to take proper remedial action. *See* U.S.C. §2000e(a)(1); *Nitsche v. CEO of Osage Valley Elec. Co-op.*, 446 F.3d 841, 845 (8th Cir. 2006). When the harasser is a co-worker, rather than a supervisor, the employer is liable only if it "was negligent with respect to the offensive

behavior." N*eel v. CRST Expedited, Inc.*, 2020 WL 1052520, at *7 (N.D. Iowa Mar. 4, 2020) (quoting *Vance v. Ball State Univ.*, 570 U.S. 421, 427 (2013)). To establish a co-worker hostile work environment claim, the Plaintiff must show both that the defendant's actions created a hostile work environment and that the employer's "negligence le[d] to the creation or continuation of [the] hostile work environment." *Id.* (quoting *Vance*, 570 U.S. at 446). In this context, negligence means that "the employer knew or reasonably should have known about the harassment but failed to take remedial action." *Id.* "To fulfill its duty to remedy sexual harassment in the workplace, an employer is obligated to take action that is 'reasonably calculated to stop the harassment.'" *Engel v. Rapid City Sch. Dist.*, 506 F.3d 1118, 1125 (8th Cir. 2007) (quoting *Carter v. Chrysler Corp.*, 173 F.3d 693, 702 (8th Cir. 1999)).

Title VII does not, however, prohibit all verbal and/or physical harassment in the workplace and is not a general civility code for the American workplace. *Hervey v. County of Koochiching*, 527 F.3d 711, 722 (8th Cir. 2008) (internal marks omitted). The Plaintiff must produce admissible evidence of a workplace "permeated with discriminatory intimidation, ridicule, and insult." *LeGrand v. Area Res. for Cmty. & Human Servs.*, 394 F.3d 1098, 1101–03 (8th Cir. 2005) ("manifestly inappropriate" actions that ranged from "crass to churlish" that occurred over a nine-month period were not so severe as to "poison LeGrande's work environment"). Isolated incidents are generally insufficient to establish an actionable claim for harassment, and the simple belief that one's work environment is hostile and abusive is not enough. *See Duncan v. County of Dakota, Nebraska, et al.*, 687 F.3d 955, 959 (8th Cir. 2012) ("'Simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment.'"); *Jesevitz v. Potter*, 282 F.3d 542, 547 (8th Cir. 2002) (though the plaintiff may be "upset and embarrassed" by the conduct, claim is only actionable if

conduct affects a term, condition, or privilege of employment). Factors to consider include: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *LeGrand*, 394 F.3d at 1100–03. Thus, a Plaintiff's claim must describe a level of conduct that is pervasive, severe, and intimidating to sustain a hostile work environment claim. *See Duncan v. GMC*, 300 F.3d 928, 933 (8th Cir. 2002) (determining that defendant was entitled to judgment as a matter of law because harassment was not severe and pervasive enough to create a hostile work environment in workplace where the plaintiff complained about a co-worker who, over a two-year period, requested a relationship with her; briefly touched her hand on four or five occasions; asked her to use his computer, which had a picture of a naked woman as the screen saver; asked the plaintiff to draw his planter, which had a hole in the front of a man's pants that allowed a cactus to protrude; and kept a child's pacifier that was shaped like a penis in his office that he showed to the plaintiff on two occasions); *Alagna v. Smithville R-II School Dist.*, 324 F.3d 975, 980 (8th Cir. 2003) (determining that a male teacher's touching a female teacher, telling her that he loved her, and acting inappropriately for two years was not sufficiently severe to satisfy a claim for hostile work environment sexual harassment); *LeGrand*, 394 F.3d at 1100–03 (determining that unwelcome sexual advances by alleged harasser, including asking plaintiff to watch pornographic movies and "jerk off" to relieve stress, kissing plaintiff, grabbing plaintiff's buttocks, reaching for his genitals, brushing plaintiff's crotch area with the back of his hand, and gripping plaintiff's thigh under a table during a meeting, were not so severe or pervasive as to "poison" the plaintiff's work environment); *Vajdl v. Mesabi Acad. of KidsPeace, Inc.*, 484 F.3d 546, 551–52 (8th Cir. 2007) (concluding that co-workers' repeated comments about plaintiff's body, repeated requests for dates, and two incidents of touching did not

amount to severe or pervasive conduct); *Anderson v. Family Dollar Stores of Arkansas, Inc.*, 579 F.3d 858, 862 (8th Cir. 2009) (determining that alleged harasser's conduct, including rubbing plaintiff's shoulders and back, calling her "baby doll," insinuating that she could go farther in the company if she got along with him, and accusing her of not wanting to be "one of my girls," was not sufficiently severe or pervasive enough to alter a term, condition, or privilege of her employment); *McMiller v. Metro*, 738 F.3d 185, 188 (8th Cir. 2013) (alleged harasser's conduct, including kissing plaintiff on two occasions, placing or attempting to place his arms around her three times, and requesting she remove an ingrown hair from his chin, did not rise to the level of severe or pervasive conduct).

In the present case, there is no question that the Plaintiff is female, Engel is male, the alleged harassment was sexual in nature, and the harassment was unwelcome. The Plaintiff has not, however, shown that the harassment was pervasive, severe, and intimidating, or that the Defendants knew or should have known of the harassment and failed to take proper remedial action. She reported only two instances of sexual harassment to her employer. *See Duncan*, 687 F.3d at 959 (isolated incidents are generally insufficient to establish an actionable claim for harassment).

In November 2024, after being sent home the previous day for suspicion of intoxication, Plaintiff advised Nooner that Engel had asked her to "suck [his] dick with a condom on." (ECF No. 92-1, pp. 21-22). Both Plaintiff and White, an alleged witness to the conversation, were asked to submit written statements and, although Plaintiff claims to have placed a written statement under Nooner's door, there is no record of any written statements from Plaintiff or White. (ECF No. 92-2, p. 4). When Engel was interviewed, he denied asking that question, suggesting Plaintiff was merely trying to get back at him for reporting his suspicion that she had been intoxicated the

previous day. Despite his denial, Nooner warned him that any sexual comments in the workplace violate company policy and would not be tolerated. (*Id.*). Nooner also spoke with Roofe and Weaver who denied witnessing any flirtatious or inappropriate interactions between Engel and the Plaintiff. (*Id.* at 5).

As a precaution, Nooner instructed Roofe and Weaver to refrain from assigning Engel and Plaintiff to the same work area of the floor when preparing the daily boards. "[T]he Eighth Circuit has held that 'an employer is not liable [for acts of sexual harassment in the workplace] if it takes prompt remedial action that is reasonably calculated to stop the harassment.'" *Clinard v. Washington Regional Medical Center*, 2021 WL 4776694, at *5 (W.D. Ark. Oct. 13, 2021) (quoting *Engel v. Rapid City Sch. Dist.*, 506 F.3d 1118, 1123 (8th Cir. 2007)). The factors a court may consider when assessing the reasonableness of an employer's remedial measures include: the amount of time elapsed between the notice of harassment and the remedial action; the options available to the employer, such as employee training sessions, disciplinary action, reprimand in personnel files, and termination; and whether or not the measures ended the harassment. *Stuart v. General Motors Corp.*, 217 F.3d 621, 633 (8th Cir. 2000).

Even if we were to consider the Plaintiff's claim that Roofe and Weaver continued to schedule her to work with Engel, the alleged housekeeping schedules she has attached to her response are barely legible and provide no identifying information. (ECF No. 100, pp. 13-17). Further, the Plaintiff failed to provide said logs to the Defendants during discovery, despite this Court's Order directing her to provide complete responses to the Defendant's interrogatories and requests for production. (ECF No. 78). Fed. R. Civ. P. 37(c) (withheld or undisclosed material is automatically excluded unless the violation is substantially justified or harmless). As such, they will not be considered.

Additionally, at this point, Nooner had received only one unsubstantiated report of sexual harassment against Engel for which she did admonish him that sexual comments of any kind violated company policy and would not be tolerated and asked that the Plaintiff and Engel not be scheduled to work on the same floor. (ECF No. 92-2, p. 4). To her knowledge, these actions remedied the alleged sexual harassment as no further complaints were made.

In April 2025, the day after providing her two-week notice of resignation, Plaintiff reported that Engel had made another inappropriate comment and presented a recording in which she was having a conversation with Engel who stated the Arlington needed to hire more females "that he had not yet sexually harassed." (*Id.* at p. 28; ECF No. 92-2, p. 6). When confronted by Nooner, Engel admitted to making the statement but indicated it was made in a joking manner. And, after hearing the recording, Nooner agreed it was a casual and joking conversation. Regardless of intent, she advised Engel that comments of a sexual nature were inappropriate in the workplace and could be perceived as harassment.

After completing her shift on April 28, 2025, less than a week after reporting Engel's statement and prior to the end of the two weeks' notice she had given, the Plaintiff stopped reporting for her scheduled shifts and was ultimately terminated.

According to Nooner, Plaintiff's November 2024 and April 2025 complaints were the only complaints filed against Engel. And, although the Plaintiff included additional alleged instances of sexual harassment in her EEOC complaint, the Arlington cannot be tasked with knowledge of complaints of which they were never notified.[2] Accordingly, the undersigned agrees with the Defendants that the Plaintiff cannot establish an actionable harassment claim.

[2] The Court notes that the Plaintiff filed several sworn witness statements with the Supplement to her Complaint. (ECF No. 10, pp. 5-14). In these statements, witnesses claim to have witnessed Engel sexually harass the Plaintiff on multiple occasions. Several even claim to have reported this

### B. The Retaliation Claim

Title VII's antiretaliation provision forbids employer actions that "discriminate against" an employee (or job applicant) because she has "opposed" a practice that Title VII forbids or has "made a charge, testified, assisted, or participated in" a Title VII "investigation, proceeding, or hearing." § 2000e–3(a). To establish a claim of retaliation, appellant had to show that: (1) she filed a charge of harassment or engaged in other protected activity; (2) her employer subsequently took an adverse employment action against her; and (3) the adverse action was causally linked to her protected activity. *See Cross v. Cleaver*, 142 F.3d 1059, 1071–72 (8th Cir.1998). The adverse action does not have to be a discharge but must be "'more disruptive than a mere inconvenience or an alteration of job responsibilities' [or][c]hanges in duties or working conditions that cause no materially significant disadvantage." *Kim v. Nash Finch Co.,* 123 F.3d 1046, 1060 (8th Cir. 1997) (some internal quotations and citations omitted) (citing *Harlston v. McDonnell Douglas Corp.*, 37 F.3d 379, 382 (8th Cir. 1994). However, "not everything that makes an employee unhappy is an actionable adverse action." *Montandon v. Farmland Indus., Inc.*, 116 F.3d 355, 359 (8th Cir. 1997).

First, the Plaintiff alleges that after her November 2024 complaint, her hours were cut in retaliation. But both the Plaintiff and the Defendants agree that the Arlington's peak season extends from early spring until early winter. (ECF No. 92-1, p. 11; ECF No. 92-2, p. 1). Business tends to slow down during the fourth quarter of the year through the beginning of the first quarter of the next year. (ECF No. 92-1, p. 11; ECF No. 92-2, p. 1). And the Plaintiff indicated that the Arlington had told her that the reduction in hours was because the hotel was slow.[3] (ECF No. 92-

---

behavior to Nooner. None, however, provide details of the alleged sexual harassment, dates on which the harassment occurred, or dates on which the alleged conduct was reported to management. As such, they provide little support for Plaintiff's claims.

[3] Based on earnings statements attached to Plaintiff's Complaint, she averaged 30 hours biweekly between December 16, 2024, and April 15, 2025. (ECF No. 2-2).

1, p. 13). At least two other employees also had their hours cut. (*Id*. at 12-13). Moreover, the Plaintiff has admitted that she had been privately reprimanded for both attendance and job performance issues, although no formal employment action was taken. (ECF No. 92-1, pp. 15-17). She was also suspected of working while under the influence on at least two occasions prior to lodging her complaint against Engel. As such, the Arlington had legitimate, non-discriminatory reasons for reducing the Plaintiff's hours.

Additionally, in February 2025, the Plaintiff alleges that the Defendants retaliated against her by hiring a less qualified male applicant for the position of floor coordinator. (ECF No. 92-1, pp. 44-46). Unfortunately, she has provided no information regarding the male applicant selected or his qualifications. She claims Engel told her she would not be promoted because she was a tattletale, and that other employees advised her that she was not promoted because no one wanted to work with her. (ECF No. 92-1, pp. 46-47). Plaintiff could not, however, prove that any of this information came from HR. Thus, the only connection between her November 2024 complaint and her 2025 application for the floor coordinator position is timing. The Eighth Circuit has held that the "inference of retaliation vanishes altogether when the time gap between the protected activity and the adverse employment action is measured in months." *Tyler v. University of Arkansas Bd. of Trustees*, 628 F.3d 980, 986 (8th Cir. 2011). Thus, even if the individual selected for the position was of the opposite sex and less qualified, by her own admissions, the Plaintiff had both attendance and job performance issues, providing legitimate and non-discriminatory reasons for the failure to promote.

Accordingly, the Plaintiff is also unable to prove that she suffered an adverse employment action for reporting Engel's alleged harassment.

## IV. CONCLUSION

For the reasons and upon the authorities discussed above, the undersigned RECOMMENDS that the Defendants' Motion for Summary Judgment (ECF No. 92) be GRANTED and Plaintiff's Complaint be dismissed with prejudice.

**The parties have fourteen (14) days from receipt of this Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in a waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED on this 17th day of August 2026.

/s/ *Mark E. Ford*

HON. MARK E. FORD
UNITED STATES MAGISTRATE JUDGE